UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **R.M.,** | Civ. No. 2:11-cv-01676 (WJM) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| **LON SAINATO,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff R.M. filed this 42 U.S.C. 1983 ("Section 1983") action against four Defendants: (1) Lon Sainato; (2) the County of Morris; (3) the Office of the Morris County Sheriff (the "Sheriff's Office"); and (4) Edward V. Rochford, the Morris County Sheriff ("Sheriff Rochford"). This matter comes before the Court on two motions to dismiss, one filed by the Sheriff's Office, and the other filed by Sheriff Rochford. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion to dismiss filed by the Sheriff's Office is **GRANTED**, and the motion to dismiss filed by Sheriff Rochford is **GRANTED IN PART AND DENIED IN PART**.

I. BACKGROUND

  A. FACTS

Plaintiff was a participant in the Morris County Sheriff's Labor Assistance Program ("SLAP program"), a mandatory, court-ordered program that allows approved candidates to serve their jail sentences by participating in supervised community service. Plaintiff alleges that, during his participation in the SLAP program at the Cedar Knolls Fire Department, he was sexually assaulted by Defendant Sainato, a Sheriff's Office employee. Sainato has since pled guilty to these offenses.

Plaintiff alleges that, prior to the sexual assault, Sainato had been the subject of a criminal investigation related to sexual misconduct. Plaintiff further alleges that, prior to the assault, Sainato was engaged in a series of sexual encounters with inmates participating in the SLAP program.

1

The Sheriff's Office was the law enforcement agency that oversaw the Morris County SLAP program. Sheriff Rochford was the commanding officer of the Morris County Sheriff's Department, and was responsible for hiring, training, and supervising Sheriff's Office employees, including Sainato. Plaintiff alleges that both Defendants knew about the criminal investigation into Sainato's alleged sexual misconduct, and knew that Sainato was engaged in sexual encounters with SLAP program inmates.

### B. PROCEDURAL HISTORY

This case involves two nearly identical actions. The first action was filed against the same four Defendants in the District of New Jersey on February 18, 2010, and was assigned to the Hon. Peter G. Sheridan (the "First Action"). *See* Case No. 10-cv-834, Compl., ECF No. 1. The County of Morris, the Sheriff's Office, and Sheriff Rochford moved to dismiss the complaint in the First Action. *See* Case No. 10-cv-834, ECF Nos. 7, 10, 17. In an Order dated February 16, 2011, Judge Sheridan dismissed the complaint against the County of Morris with prejudice. Judge Sheridan dismissed the complaint against Sheriff Rochford and the Sheriff's Office without prejudice and gave Plaintiff twenty-one (21) days to amend the complaint.

While the First Action was pending before Judge Sheridan, Plaintiff filed an identical complaint against the four Defendants in the Superior Court of New Jersey, Morris County. Following Judge Sheridan's order of dismissal in the First Action, Plaintiff amended his state court complaint to add allegations regarding Defendants' failure to investigate Sainato's criminal history and prior sexual relationships (the "First Amended Complaint" or the "Complaint"). On March 24, 2011, Defendants removed the state court action to this Court, thus initiating the current action.

On April 28, 2011, Plaintiff filed a Stipulation of Dismissal to close the First Action. The Stipulation explained that Plaintiff was voluntarily dismissing the First Action "without prejudice to the [present action]," because Defendant Sainato was the "sole remaining defendant" in the First Action, and the present action was moving forward as to all four Defendants. Case No. 10-cv-834, ECF No. 28. Shortly thereafter, Plaintiff stipulated to the dismissal of the County of Morris in the present action, noting that Judge Sheridan had already dismissed the claims against the County of Morris with prejudice in a matter "involv[ing] identical questions of law and fact." Stipulation of Dismissal as to County of Morris Only at 2, ECF No. 8.

The Sheriff's Office and Sheriff Rochford now move to dismiss the present action.

### II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under

2

Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility."  *Iqbal*, 129 S.Ct. at 1949 (2009).

### III. DISCUSSION

The Court reads the First Amended Complaint as asserting the following six claims:

> **(1) Counts I and II:**  Section 1983 claims against all Defendants;
> **(2) Count III:**  New Jersey common law claim against Sainato for intentional infliction of emotional distress and intentional infliction of physical injury;
> **(3) Count IV:**  New Jersey common law claim against Sainato for negligence; and
> **(4) Counts V and VI:**  Section 1983 claims and New Jersey common law claims against all other Defendants for negligent hiring, training, and supervision.[1]

Both the Sheriff's Office and Sheriff Rochford have moved to dismiss the claims against them.  The Court will address each motion in turn.

#### A. THE SHERIFF'S OFFICE

The Sheriff's Office argues that Plaintiff's claims against it are barred by *res judicata*.  The Sheriff's Office reasons that a nearly identical complaint against the

---

[1] Counts 3 and 4 of the First Amended Complaint only contain specific allegations about Defendant Sainato.  Although Counts 3 and 4 conclude by stating that "defendants" acted unlawfully and "defendants" are liable for damages, these allegations are insufficient to state a claim against the other defendants.  *See Twombly*, 550 U.S. at 555 ("'entitlement to relief' requires more than labels and conclusions").  Counts 5 and 6 assert claims under the "laws of the State of New Jersey" and "the laws and Constitution of the United States."  First Amended Complaint ("FAC"), ECF No. 1 Ex. 1 at 13, 17.  Because the Court is required to view the Complaint in the light most favorable to Plaintiff, the Court will read the Complaint as asserting claims under Section 1983 and New Jersey common law.  *See Warth*, 422 U.S. at 501.

County of Morris was dismissed with prejudice, and the Sheriff's Office and the County of Morris are essentially one entity. Thus, the dismissal of the County should apply equally to the Sheriff's Office. Plaintiff argues that his claims are not barred by *res judicata* because Judge Sheridan dismissed the claims against the Sheriff's Office without prejudice. Plaintiff further argues that he specifically stated in the Stipulation of Dismissal filed in the First Action that he was voluntarily dismissing the First Action "without prejudice to the [present action]." Case No. 10-cv-834, ECF No. 28. The Court finds that the Sherriff's Office should be dismissed for slightly different reasons than those proffered by the Sheriff's Office.

Courts "treat [a] municipality and its police department as a single entity for purposes of section 1983 liability." *See Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 n.4 (3d Cir. 1997). For this reason, "[p]olice departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself." *Hernandez v. Borough of Palisades Park Police Dep't*, 58 Fed. Appx. 909, 912 (3d Cir. 2003). When a Section 1983 action has been brought against a municipality and a police department, the police department must be dismissed, as "it is to the municipality that any liability must flow." *Millar v. Windsor Twp.*, No. 1:04-CV-2529, 2005 U.S. Dist. LEXIS 17433, at *8-9 (M.D. Pa. June 24, 2005) (granting motion to dismiss Police Commission because it was not a proper party to the suit); *see also White v. City of Trenton*, 2009 U.S. Dist. LEXIS 43688, 15-16 (D.N.J. May 20, 2009) (police department was not a proper party to a 1983 action); *Miller v. City of E. Orange*, 509 F. Supp. 2d 452, 459 (D.N.J. 2007) (same). The reasoning applied to police departments is applied with equal force to sheriff's offices. *Cap v. Rapp*, No. 90-0661, 1991 U.S. Dist. LEXIS 1360, at *9-10 (E.D. Pa. Feb. 5, 1991) (In the same way that a city police department is treated as one entity with the city, a county sheriff's office is treated as one entity with the county).

In this case, the Sheriff's Office should be dismissed because it is not a proper party to the action. The Sheriff's Office is "merely an administrative arm of the municipality itself." *See Hernandez*, 58 Fed. Appx. at 912. The County of Morris has, by resolution, tasked the Sheriff's Office with carrying out its statutory duties to maintain a correctional facility. Sheriff's Office employees are technically classified as employees of the County, and their salaries and collective bargaining agreements must be approved by the County to be effective. As such, any liability under Section 1983 would flow to the County of Morris, not the Sheriff's Office, and the County has already been dismissed with prejudice. Although the Court is sympathetic to the fact that Plaintiff voluntarily dismissed the Sherriff's Office from the First Action on the assumption that he could pursue claims against it in the present action, the reality is that Plaintiff's Section 1983 claims could not have been maintained against the Sheriff's Office in either case.

Accordingly, the motion to dismiss filed by the Sheriff's Office is granted, and the Sheriff's Office is dismissed with prejudice.

### B.     SHERIFF ROCHFORD

Plaintiff pled Section 1983 claims and New Jersey common law claims against Sheriff Rochford. The Court will first address the Section 1983 claims, followed by the state law claims.

#### 1.  Section 1983 Claims

Plaintiff asserts Section 1983 claims against Sheriff Rochford in his official and individual capacity for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments. Plaintiff raises three theories of liability under the Eighth Amendment: (1) direct liability, (2) fault in hiring, and (3) supervisory liability/failure to train. Sheriff Rochford moved to dismiss all counts. For the reasons set forth below, the Court makes the following determinations. ***First***, the claims pled against Sheriff Rochford in his official capacity are dismissed with prejudice. ***Second***, of the claims pled against Sheriff Rochford in his individual capacity, the Fourth, Fifth, and Fourteenth Amendment claims are dismissed without prejudice. ***Third***, the Eighth Amendment supervisory liability/failure to train claim is dismissed without prejudice. ***Finally***, Plaintiff's direct liability claim and fault in hiring claim under the Eighth Amendment survive Sheriff Rochford's motion to dismiss. Each determination will be addressed in more detail below.

##### a.  Official Capacity Claims

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" that employs the officer. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978) (Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."). Sheriff Rochford is employed by the County of Morris. Because Judge Sheridan already dismissed the County of Morris, the official capacity claims against Sheriff Rochford must also be dismissed. *See Council v. Nash*, No. 06-0007, 2007 WL 1686512, at *4 (D.N.J. Jun. 8, 2007) (dismissing official capacity claims against defendants because claims against the entity were being dismissed).

Accordingly, the official capacity claims pled against Sheriff Rochford are dismissed with prejudice.

##### b.  Individual Capacity Claims

Plaintiff argues that Sheriff Rochford is liable under Section 1983 for violating his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. FAC at 7, 8. Sheriff Rochford argues that these claims should be dismissed because (1) he is

5

entitled to qualified immunity, and (2) Plaintiff failed to state a claim for supervisory liability.[2]  Because the analysis of supervisory liability and the various constitutional claims are subsumed by the qualified immunity analysis, the Court will turn to the issue of qualified immunity.

It is well established that government officials are immune from liability for damages where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244-45 (2012).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Supreme Court set forth a two-part inquiry for resolving government officials' qualified immunity claims:  a court must decide (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right, and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[W]hether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." *Iqbal*, 129 S.Ct. at 1946.  Accordingly, "the sufficiency of [a plaintiff's] pleadings is both 'inextricably intertwined with' and 'directly implicated by' the qualified immunity defense." *Id.* at 1946-47 (citations omitted).

### i. Whether the Facts Alleged Make Out the Violation of a Constitutional Right

Plaintiff asserts that Sheriff Rochford is liable for violating his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  The Court finds that the Complaint does not sufficiently allege violations of the Fourth, Fifth, and Fourteenth Amendments, but does adequately allege a violation of the Eighth Amendment.

### 1) Fourth, Fifth, and Fourteenth Amendment Claims

---

[2] The Court's understanding of Sheriff Rochford's arguments was pieced together from multiple submissions made by multiple parties in multiple cases.  Instead of filing a motion to dismiss addressing Plaintiff's First Amended Complaint, Sheriff Rochford submitted a nine-page letter incorporating by reference his briefing for the motion to dismiss in the First Action.  His briefing in the First Action, in turn, incorporates by reference briefs submitted by other parties to the First Action.  His briefing in the First Action also addresses counts that were not included in the present Complaint (such as New Jersey Civil Rights Act claims).  The Court attempted to piece together from these various submissions only what was applicable to the current case.

Plaintiff did not plead any facts or allegations supporting a claim for violations of the Fourth, Fifth, and Fourteenth Amendments. Aside from listing these Amendments, the only part of the Complaint that addresses them is one conclusory phrase stating that Plaintiff was deprived of "life, liberty or property without due process of law." FAC at 8. If there are "counts in the pleading contain[ing] boilerplate allegations mimicking the purported legal standards for liability," the Court will not assume that they are true. *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 74 (2011); *see also Twombly*, 550 U.S. at 555 (2007) ("'[E]ntitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Accordingly, the Fourth, Fifth, and Fourteenth Amendment claims are dismissed without prejudice.

### 2)  Eighth Amendment Claims

Plaintiff adequately pled facts supporting a claim for a violation of the Eighth Amendment. The Eighth Amendment prohibits cruel and unusual punishment, and also requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Supreme Court articulated a two-part test for determining whether a prison official violated the Eighth Amendment. *Farmer v. Brennan* ("*Farmer*"), 511 U.S. 825, 834, 837 (1994). A plaintiff making such a claim must show: (1) a sufficiently serious constitutional deprivation; and (2) deliberate indifference by the prison official-defendant.[3]  *Id.* There is no dispute that the sexual abuse suffered by Plaintiff was sufficiently serious to support an Eighth Amendment claim, so the key issue is whether Sheriff Rochford exhibited deliberate indifference to Plaintiff's safety.

If read in the light most favorable to Plaintiff, the Complaint proffers three theories as to why Sheriff Rochford acted with deliberate indifference to Plaintiff's safety:  (1) direct liability, (2) fault in hiring, and (3) supervisory/training liability. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001) (explaining that direct liability and supervisory liability are two distinct ways of making out a deliberate indifference claim under the Eighth Amendment); *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997) (discussing the fault in hiring theory). The Court will address each theory in turn.

### a)  Direct Liability

Plaintiff adequately pled facts and allegations supporting a theory of direct liability. In *Farmer*, the Supreme Court stated that an official may be held directly liable

---

[3] This test is properly applied to employees and supervisors of inmate supervision programs, such as the SLAP program. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001) (using the *Farmer* test to evaluate the liability of employees and supervisors at a state run youth development and detention center).

7

for "deliberate indifference" to a plaintiff's Eighth Amendment rights "if [1] he knows that inmates face a substantial risk of serious harm and [2] disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. This standard requires actual knowledge: the official "must actually have known or been aware of the excessive risk to inmate safety." *Id.* at 839-40.

In this case, Plaintiff adequately pled that Sheriff Rochford had actual knowledge of an excessive risk to inmate safety. The Complaint alleges that Sheriff Rochford had "actual . . . knowledge" of the fact that Sainato was the subject of a criminal investigation involving allegations of sexual misconduct. FAC at 14. The Complaint also alleges that Sheriff Rochford had "actual . . . knowledge" that Sainato "was engaged in a series of sexual encounters with inmates" participating in the SLAP program. FAC at 14-15. The Complaint therefore adequately alleges facts supporting Plaintiff's claim that Sheriff Rochford knew of a substantial risk of serious harm to the inmates. Plaintiff also adequately pled that Sheriff Rochford disregarded the risk. For example, the Complaint alleges that Sheriff Rochford "failed to take action to supervise, oversee, train, control, discipline, or remove" Sainato, and instead "entrusted [him] with the legal authority to supervise male and female inmates." FAC at 14.

### b) Fault in Hiring

Plaintiff adequately pled facts and allegations supporting a theory of fault in hiring. A plaintiff making a fault in hiring claim based on inadequate screening must demonstrate that "scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411. "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412 (emphasis in original). In other words, a plaintiff must show that there is a "direct causal link" between "the background of the particular officer hired [and] the particular constitutional violation the respondent suffered." *Id.* at 404, 414 n.1.

In this case, Plaintiff alleged that Sheriff Rochford was responsible for hiring decisions and failed to adequately screen Defendant Sainato before hiring him. *See* FAC at 4, 14. Specifically, Plaintiff alleges that Sheriff Rochford hired Sainato "despite actual and/or constructive knowledge [that Sainato] was the subject of a criminal investigation and charge(s) involving allegations of inappropriate sexual conduct." FAC at 14. Plaintiff's allegations clearly establish a direct causal link between Sainato's background, which includes criminal charges for sexual misconduct, and the particular constitutional violation Plaintiff suffered, *i.e.*, sexual assault. Thus, Plaintiff sufficiently alleged facts to

support that Sainato "was highly likely to inflict the *particular* injury suffered by the plaintiff." *Brown*, 520 U.S. at 412 (emphasis in original).

### c) Supervisory/Training Liability

Plaintiff failed to plead sufficient facts and allegations to support a theory of supervisory/training liability. Based on the Supreme Court's reasoning in *City of Canton v. Harris*, 489 U.S. 378 (1989), the Third Circuit developed a four-part test for liability under the Eighth Amendment for failure to properly supervise and train. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Under this regime, a plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. *Id.*; *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001).

It is not clear whether this theory of supervisory liability is still available in light of the Supreme Court's decision in *Iqbal*. The Third Circuit recently observed that "'[n]umerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after *Iqbal*.'" *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 70 (2011). The Third Circuit has "refrained from answering the question of whether *Iqbal* eliminated—or at least narrowed the scope of—supervisory liability because it was ultimately unnecessary to do so" in light of the cases that have been presented to it thus far. *Id.*

Like the Third Circuit in *Argueta*, this Court need not reach the question of the scope of supervising liability post-*Iqbal*, because the allegations in the Complaint are insufficient to make out a claim for supervisory liability. Consistent with Judge Sheridan's findings in the First Action, this Court finds that Plaintiff failed to identify a policy or practice that Sheriff Rochford failed to employ. Specifically, Plaintiff failed to "identify in [his] pleading what exactly [the Defendant] should have done differently, whether with respect to specific training programs or other matters, that would have prevented the unconstitutional conduct." *See, e.g.*, *Beers-Capitol*, 256 F.3d at 134 (3d Cir. 2001); *Sample*, 885 F.2d at 1118. Accordingly, this claim is dismissed without prejudice.

### ii. Whether the Constitutional Right Was Clearly Established

Having found that the facts alleged by Plaintiff make out a violation of a constitutional right, the Court now turns to the second prong of the qualified immunity analysis: whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier*, 533 U.S. at 201. There can be no dispute that Plaintiff's Eighth Amendment rights were clearly established at the time of Sainato's misconduct.

As the Third Circuit explained, "the right not to be sexually abused by a state employee while in confinement [is] clearly established." *Beers-Capitol*, 256 F.3d at 142 n.15; *see also Farmer*, 511 U.S. at 833-34; *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976); *Stoneking*, 882 F.2d at 726.

*****

In conclusion, the Court finds that Sheriff Rochford is not entitled to qualified immunity. The Court further finds that Plaintiff adequately stated claims for direct liability and fault in hiring under the Eighth Amendment.

### 2. State Law Claims

Plaintiff asserts New Jersey state law claims against Sheriff Rochford for negligent hiring, training, and supervision. Sheriff Rochford argues that he is entitled to immunity from these state law claims under the New Jersey Tort Claims Act. The New Jersey Tort Claims Act provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. The standard used to determine whether an employee acted in good faith under N.J.S.A. 59:3-3 is the same standard that is used to determine "objective reasonableness" under the qualified immunity analysis of Section 1983. *See Lear v. Township of Piscataway*, 566 A.2d 557, 558-59 (N.J. Super Ct. App. Div. 1989). As the Court has already determined that Sheriff Rochford's actions were not objectively reasonable under Section 1983, the Court must also find that Sheriff Rochford did not act in good faith under N.J.S.A. 59:3-3.

Accordingly, Sheriff Rochford's motion to dismiss Plaintiff's state law claims is denied.

### IV. CONCLUSION

For the reasons stated above, the motion to dismiss filed by the Sheriff's Office is **GRANTED**. The motion to dismiss filed by Sheriff Rochford is **GRANTED IN PART AND DENIED IN PART**. Specifically: (1) the claims pled against Sheriff Rochford in his official capacity are dismissed with prejudice; (2) the Fourth, Fifth, and Fourteenth Amendment claims are dismissed without prejudice; and (3) the Eighth Amendment supervisory liability/failure to train claim is dismissed without prejudice. Plaintiff's direct liability and fault in hiring claims under the Eighth Amendment survive Sheriff Rochford's motion to dismiss, as do Plaintiff's state law claims for negligent hiring, training, and supervision. An appropriate order follows.

/s/ William J. Martini<br>**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 9, 2011.**